# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States Courts
Southern District of Texas
FILED

*September 15, 2023*

Nathan Ochsner, Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched*
*or identify the person by name and address)*

IN THE MATTER OF THE SEARCH OF INFORMATION
ASSOCIATED WITH A BLACK APPLE IPHONE SE,
WITH A RED CASE, IMEI 355568941575893

)
)
)
)
)
)
)

Case No.

## 4:23-mj-1881

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A" and the Affidavit In Support of the Search Warrant)

located in the _____Southern_____ District of _____Texas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B" and the Affidavit In Support of the Search Warrant)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC 1951 (a) | Interference with Commerce by Robbery |

The application is based on these facts:

(See the Affidavit In Support of Search Warrant)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Joseph T. Oppedisano*
*Applicant's signature*

Joseph T. Oppedisano , FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: _____09/15/2023_____

*Petr Bray*
*Judge's signature*

City and state:  Houston, Texas

Petr Bray, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN THE MATTER OF THE SEARCH OF:
KENNETH KELLEY: A BLACK APPLE
IPHONE SE, WITH A RED CASE, IMEI
355568941575893

Case No. **4:23-mj-1881**
_____

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Joseph T. Oppedisano, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to locate and identify any information, which is described in Attachment B, on the cellular devices, which are described in Attachment A, which is located at the Houston Police Department ("HPD"), 1200 Travis Street, Houston, TEXAS 77002.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March 2019. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2516. I am currently assigned to the FBI Houston Division Field Office as part of the Violent Crimes Task Force.

3. In my capacity as an FBI Special Agent, I have participated in investigations of various federal criminal violations including violent crimes, money laundering, and other complex financial crimes. I am currently assigned to the Violent Crimes Squad in the Houston Division and was previously assigned to the White-Collar squad which investigated Corporate, Securities, and Commodities Fraud. Over the years, I have conducted or participated in physical

surveillances, Title III electronic surveillances, the execution of search warrants, debriefings of informants, and attended specialized and advanced trainings related to both violent and complex financial crimes.  Through my training, education, and experience, including conversations with other law enforcement officers, I have become familiar with the patterns of activity regarding aggravated robbery suspects and the methods they employ to plan, coordinate, and conduct these robberies, including the use of telecommunication devices such as cellular telephones, use of counter surveillance techniques, and the use of cryptic language, words, and references to conduct their activities.  Suspects often communicate using both voice calls and message applications prior to, during, and after the execution of a robbery.  This allows them to communicate and coordinate the surveillance and execution of the robbery while using multiple vehicles.  Suspects will often take photographs of the commercial business and then send those photographs to other suspects involved with the theft.  Suspects often take photographs of the stolen currency or property and then share these photographs with other suspects or associates. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other officers, agents, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on my training and experience and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that within the wireless device that is described in

Attachment A contains evidence, fruits of a crime, and property intended for use of a crime, specifically violations of 18 U.S.C. § 1951 and 18 U.S.C. § 922(a)(1)(A).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The property to be searched is Kenneth Kelley's ("Kelley") black Apple iPhone SE with a red case, IMEI:355568941575893. The device is currently located at the HPD, 1200 Travis Street, Houston, TEXAS 77002, in their custody.

## PROBABLE CAUSE

7.      The FBI Houston Violent Crimes Task Force (VCTF) is investigating a series of aggravated robberies which occurred form April 3rd through June 20th, 2023. The aggravated robberies followed a similar pattern in that the subjects would request a ride share from either Uber or Lyft, wait for the driver to arrive at the pickup location, and proceed to rob the driver at gun point. In some instances, the subjects would kidnap the victim at gun point, take them to a nearby ATM, withdraw their money, and then steal the vehicle.

1.      **Incident 01:** Your affiant reviewed incident 01 Houston Police Department ("HPD") report which occurred in the Southern District of Texas and learned the following information. On April 3rd, 2023, complainant (here-after identified as Victim 1) advised he was employed as Lyft driver. HPD Officers responded to 10129 Teneha Dr. in Houston, Texas at approximately 11:27pm. Upon HPD officer's arrival they were advised by Victim 1 he responded to the request for a ride share at an unknown location. Upon his arrival at the location four unknown black male subjects got into his vehicle. Immediately upon the subjects entering his vehicle one unknown black male ("UNSUB 1") struck him in the back of the head multiple times with what he believes to be a pistol. Victim 1 advised that one of the UNSUBs took his

3

phones while UNSUB 1 sat in the back seat and held a pistol to his head. The UNSUBs then forced him to drive the vehicle, while still at gun point, the UNSUB's forced Victim 1 to drive to two separate ATM machines, where he was forced to withdraw money and give it to them. In total the UNSUB's forced Victim 1 to make three withdraws from two separate ATM machines with the total amount withdrawn being $1,400.00 in U.S. currency. After all funds in his account were depleted, the UNSUBs forced Victim 1 to drive them to 10100 block of Teneha Dr. where they wiped down his vehicle attempting to destroy any fingerprints or DNA evidence left behind. The subjects then fled the location on foot and Victim 1 used a private unrelated citizen's phone to contact police.

2.    **Incident 02:**  Your affiant reviewed incident 02 HPD report which occurred in the Southern District of Texas and learned the following information. On May 13th, 2023, complainant (here-after identified as Victim 1) advised he was employed as a Lyft driver. HPD officers responded to 5500 W. Fuqua St. in Houston, Texas at approximately 9:33pm. Upon HPD officer's arrival they were advised by Victim 1 he accepted the request for a ride on Anderson Rd. in Houston, Texas. Upon his arrival three unknown black male subjects ("UNSUB") entered his vehicle. The UNSUB's then put on masks over their faces and placed a pistol to his neck ("UNSUB 1") and asked Victim 1 if he had any money. Victim 1 advised he had money on his account. UNSUB 1 then demanded Victim 1 's phone along with the passcode for the phone. UNSUB then transferred $2,000.00 in U.S. currency from his cash app account. Victim 1 stated that during the incident UNSUB 1 threatened to kill him if he looked back at them or if he did anything they didn't like. The UNSUBs then debated amongst themselves whether to take his phone, go to an ATM machine or place him into the trunk of his own vehicle.

After all UNSUB's debated amongst themselves for several minutes, the UNSUB's drove him to an unknown street where UNSUB 1 told him "We're gonna let you go. Get out, Get out. Don't turn around. Get to your car and go." The UNSUBs then fled the location on foot. Victim 1 advised officers he thought he was going to die and fully believed his life was in jeopardy.

       3.      **Incident 03:** Your affiant reviewed incident 03 HPD report which occurred in the Southern District of Texas and learned the following information. On May 19th, 2023, complainant (here-after identified as Victim 1) advised she was employed as a Lyft driver. HPD Officers responded to 13535 S Post Oak Rd in Houston, TEXAS/ Harris County at 12:26 a.m. Victim 1 stated upon her arrival four unknown black male subjects got into her vehicle. Upon entering the vehicle one unknown black male ("UNSUB 1") pointed a gun at her and forced her to utilize CashApp to send her everything in her account (approximately 60.00 in U.S. Currency). The four unknown UNSUBs then had her drive them back to the original location of 13535 S Post Oak Rd where they exited the vehicle and fled on foot.

       4.      **Incident 04:** Your affiant reviewed incident 04 HPD report which occurred in the Southern District of Texas and learned the following information. On May 21st, 2023, complainant (here-after identified as Victim 1) advised he was employed as an Uber driver. HPD Officers responded to 5126 Glenridge Ln in Houston, TEXAS/ Harris County at 9:23 p.m. Victim 1 advised officers the he picked up four unknown black male subjects at the intersection of Campden Hill Rd. and Glenridge Ln. at approximately 8:00 P.M. Victim 1 stated he was there to pick up an Uber rider who used the name "Marcus" on the app. Victim 1 advised that as soon as all four unknown subjects entered his vehicle ("UNSUB 1"), who was positioned in the passenger seat of the vehicle, took out a gun and pointed it at him. Victim 1 stated that while he

could only physically see the one gun he feels as though two guns, one from an UNSUB in the back seat was pressed against him as well. Victim 1 stated that ("UNSUB 1") in the passenger seat told him, "Don't make any moves or I'll shoot you, I got a switch on this Glock". UNSUB 1 then reached into Victim 1 's pockets and took his three credit cards and his Samsung phone. UNSUB 1 then made him unlock his phone and demanded the login information for his bank accounts. Victim 1 stated he complied, but the UNSUBs kept putting in the wrong login information which created an error message. UNSUB 1 then used his pistol as a blunt object and struck Victim 1 in the face stating, "we are going to get this information even if we have to tie you up and put you in the trunk." The UNSUBs then ordered Victim 1 to drive the surrounding area while the continually attempted to access his monetary funds. The UNSUBs were eventually able to access his CashApp account and transfer an unknown amount of U.S. Currency. The UNSUBs then directed Victim 1 to drive to an ATM machine. Victim 1 stated the UNSUBs attempted to withdraw money but were unsuccessful. At that time ("UNSUB 2") who was sitting in the back passenger seat of the vehicle, struck Victim 1 in the face with a closed fist and asked, "do you think this is funny?" The UNSUBs then forced him to another ATM machine across the street and proceeded to take an unknown amount of U.S. Currency from his bank account. The UNSUBs then had Victim 1 drive them to the 5100 block of Markwood Ln. in Houston, TEXAS/ Harris County where the UNSUBs exited his vehicle and fled the location on foot.

5.      **Incident 05:** Your affiant reviewed incident 05 HPD report which occurred in the Southern District of Texas and learned the following information. On May 24th, 2023, complainant (here-after identified as Victim 1) advised she was employed as an Uber driver. HPD Officers responded to the intersection of Campden Hill and Danfield in Houston, TEXAS/

6

Harris County at approximately 5:52 P.M. Upon their arrival they were advised by Victim 1 that

three unknown black male subjects got into her vehicle. Victim 1 stated that shortly after she

started driving (UNSUB 1) who was seated behind her, pulled out a silver pistol and pointed it at

her side and started demanding things. Victim 1 stated (UNSUB 1) took her phone and

demanded the passwords to her phone, her Wells Fargo debit card pin, and for her to send money

from her Wells Fargo Card to their CashApp. Victim 1 told the UNSUB she did not know how to

do that. While that was taking place (UNSUB #2) who was sitting behind the front passenger

was going through her phone. UNSUB 3 was sitting in the front passenger seat would steer the

car from the passenger seat while UNSUB 1 would hand her the phone for her to input her

passwords into. UNSUB 3 would make statements to her while handing her the phone like, "if

you want to go home to your family you better give us the passwords." And UNSUB 1 told her

not to look at them or he will her kill her. Victim 1 stated that while all this was occurring the

UNSUBs had her driving in circles around the same area. When they had determined they could

not get any U.S. Currency from Victim 1 they had her stop the vehicle where they exited the car

and ran on foot. The UNSUBs kept her phone leaving her unable to contact police for assistance

and had to utilize a pay phone to dispatch police.

     6.    **Incident 06:** Your affiant reviewed incident 06 HPD report which occurred in the

Southern District of Texas and learned the following information. On May 27th, 2023,

complainant (here-after identified as Victim 1) was identified as an Uber driver. HPD Officers

responded to a shooting/ Just Occurred call at 2800 Trail Lake Dr. in Houston, TEXAS/ Harris

County. Upon officer's arrival on the scene, they found a Hispanic male Victim laying on the

ground suffering from multiple gunshot wounds. Officers attempted to interview the victim who

was in and out of consciousness and having trouble breathing at the time. Officers were able to determine the victim was an uber driver who had picked up two unknown black male subjects who robbed him while he was providing a requested uber ride. The UNSUBs took his vehicle, identified as a 2021 Jeep renegade bearing Texas License Plate SNV2771. Responding units were able to locate the vehicle a short distance away in the 2800 block of Knotty Oaks Ln unoccupied. The victim was transported to Memorial Herman Hospital in Houston, TEXAS/ Harris County where he ultimately expired due to his injuries.

7. **Incident 07:** Your affiant reviewed incident 07 HPD report which occurred in the Southern District of Texas and learned the following information. On May 29th, 2023, complainant (here-after identified as Victim 1) advised she was employed as a Lyft driver. HPD Officers responded to 5417 Anderson Rd. in Houston, TEXAS/ Harris County at 7:56 P.M. Upon their arrival they were advised by Victim 1 that she responded to a request for a Lyft service and three unknown black male subjects entered her vehicle and all sat in the back seat of her vehicle. Victim 1 stated a black male (UNSUB 1) pointed a silver pistol at her lower back and told her not to look back and to keep her eyes forward or he was going to shoot her. The victim stated the UNSUBs made her drive-in circles while they drove around in circles going through her property in her purse. Victim 1 stated the UNSUBs took her iPhone valued at $1,000.00 in U.S. currency and $26.00 cash in U.S. Currency. The UNSUBs were upset and agitated she did not have any money in her bank account for them to transfer. The UNSUBs then had Victim 1 drop them off in the 4800 block of Danfield Dr. in Houston, TEXAS/ Harris County where they fled the vehicle on foot.

8.     **Incident 08:** Your affiant reviewed incident 08 HPD report which occurred in the

Southern District of Texas and learned the following information. On May 29th, 2023,

complainant (here-after identified as Victim 1) advised he was employed as an Uber driver.

Harris County Sheriff's Deputies responded to 15710 Ella Blvd in Houston, TEXAS/ Harris

County where they were advised Victim 1 responded to a request for an Uber ride in the 700

block of Sun Prairie Dr in Houston, TEXAS/ Harris County. Upon his arrival Three unknown

black male subjects approached and entered his vehicle. One unknown black male subject

(UNSUB 1) ordered him to get into the front passenger seat and UNSUB 1 got into the driver's

seat of the vehicle. The UNSUB then ordered him to send all the money he had in his CashApp

account to their account then drove him to multiple ATM machines in the area to withdraw more

cash. Victim 1 stated the UNSUBs were able to withdraw 600.00 in U.S. Currency from the

machines in total. The UNSUBs also took his Apple Air Pods valued at 140.00 and threw his

Apple watch (valued at 600.00) out the window. The UNSUBs then had Victim 1 pull to the side

of the street at 15710 Ella Blvd where they exited his vehicle and fled on foot from the location.

9.     **Incident 09:** Your affiant reviewed incident 09 HPD report which occurred in the

Southern District of Texas and learned the following information. On June 3rd, 2023,

complainant (here-after identified as Victim 1) advised she was employed as an Uber driver.

Harris County Sheriff's Deputies responded to 1201 State Highway 6 North, in Harris County,

Texas. Upon their arrival they were advised by Victim 1 that at approximately 11:40 P.M. on

June 2nd, 2023, she picked up a Uber customer under the name "KK" at 911 Sun Prairie Dr. in

Houston, TEXAS/ Harris County. Victim 1 stated two unknown black male subjects entered the

back passenger seat of her vehicle. (UNSUB 1) was positioned himself in back passenger seat

directly behind her while (UNSUB 2) sat in the back passenger seat behind the front passenger seat of the vehicle. (UNSUB 1) produced a pistol and placed it against her right rib cage and demanded she move to the passenger seat of the vehicle. Victim 1 complied and moved to the directed seat without getting out of the vehicle.  (UNSUB 2) then exited the vehicle and moved to the driver's seat of the vehicle. (UNSUB 1) told her not to "do anything stupid and that they were going to drive her to the nearest ATM machine to withdraw money from her account." Victim 1 also stated they went through her wallet and located 200.00 in U.S. Currency which they took. (UNSUB 1) who remained in the back passenger seat of the vehicle with a pistol on her, told her she had a nice butt and asked about her sexual orientation. Victim 1 told (UNSUB 1) that she is gay and does not like men, but (UNSUB 1) stated he didn't care and insisted she give him oral sex. Victim 1 feared for her life and at gunpoint complied. Victim 1 stated she was forced to provide oral sex to (UNSUB 1) for approximately two minutes while the muzzle of (UNSUB 1's) pistol was placed against the back of her head. During that time (UNSUB 2) was driving to a nearby ATM machine. Upon their arrival the UNSUBs forced her to withdraw 600.00 in U.S. Currency from her bank account. (UNSUB 2) then drove to a second ATM machine where she was forced to withdraw an additional 850.00 in U.S. Currency. The UNSUBs then had Victim 1 return to the original location where they exited the vehicle and fled on foot from the vehicle.

10.    **Incident 10:** Your affiant reviewed incident 10 HPD report which occurred in the Southern District of Texas and learned the following information. On June 07, 2023, complainant (hereafter identified as Victim 1) advised he was employed as an Uber driver.  HPD Officers responded to 4925 Anderson Rd, Houston, TEXAS at approximately 9:51pm. Upon the

officer's arrival they were advised by Victim 1 he responded to a request for a ride share from

name "Nyreon" at 13000 block of Campden Hill Rd, Houston, TEXAS. Upon his arrival at the

location three unknown black male subjects got into his vehicle. Victim 1 stated that once he

pulled away the unknown black male ("UNSUB 1") sitting behind him put a gun to his back and

told him to "run me the CashApp money."  Victim 1 stated that he did not have any CashApp

money, but the UNSUB's ran his pockets finding his wallet.  The UNSUBs took the cash out

totaling $250.00 in U. S currency.  The UNSUBs were looking for a debit card to go to the ATM

but were unsuccessful.  One of the UNSUB's told Victim 1 that they would kill him and placed

the firearm to his head, while pushing it back and forth on the right side of his head.  Victim 1

decided to take matters into his own hands by grabbing the gun with both of his hands raising it

to the roof of the vehicle. While this was happening Victim 1 was being hit by the UNSUB's

causing Victim 1 to step on the accelerator crashing his vehicle into a park car.  All the

UNSUB's exited the vehicle and ran on foot in the other direction.

11.     **Incident 11:** Your affiant reviewed incident 11 HPD report which occurred in the

Southern District of Texas and learned the following information. On June 09, 2023,

complainant (hereafter identified as Victim 1) advised he was employed as a Lyft driver.  HPD

Officers responded to 8601 Martin Luther King Blvd, Houston, TEXAS at approximately

2:27pm. Upon the officer's arrival they were advised by Victim 1 he responded to a request for a

ride share at the Greenspoint area of Houston, TEXAS. Upon his arrival at the location two

unknown black male subjects ("UNSUB's") got into his vehicle.  UNSUB 1 was approximately

5'08', wearing red shorts and no shirt.  UNSUB 2 was approximately 5'11", wearing a black

jacket, grey shorts with a face covering only showing his eyes. Victim 1 stated that several

minutes into the ride UNSUB 1 pulled a gun and held it to his right side of his cheek telling him

to stay calm and drive or he will shoot him. UNSUB's told Victim 1 to pull over to the side of

the road, as he did this UNSUB 1 pistol whipped in the head and told him to move to the

passenger's seat. UNSUB 2 got into the driver's side and began to drive to an ATM. UNSUB's

demanded Victim 1 's bank information and withdrew $800.00 in U.S currency. The UNSUB's

drove approximately 4 streets away from the ATM where they stopped to get out of the vehicle.

Before the UNSUB's got out of the vehicle they took the victim's wallet, glasses and $800.00 in

cash.  The UNSUB's told Victim 1 to drive away or they will shoot him.

12.    **Incident 12:** Your affiant reviewed incident 12 HPD report which occurred in the

Southern District of Texas and learned the following information. On June 09, 2023,

complainant (hereafter identified as Victim 1) advised he was employed as an Uber driver.  HPD

Officers responded to 6850 Martin Luther King Blvd, Houston, TEXAS at approximately

8:00pm. Upon the officer's arrival they were advised by Victim 1 he responded to a request for a

ride share at an unknown location in Houston, TEXAS. Upon his arrival at the location four

unknown black male subjects ("UNSUB's") got into his vehicle. Victim 1 stated that shortly

after departing the pickup location, UNSUB 1 in the back seat pulled a gun and pointed it at him.

UNSUB 2 who was sitting in the front passenger seat was giving verbal commands and wanted

him to drive to an ATM. Victim 1 stated that they went to multiple ATM's where the UNSUBs

withdrew approximately $1,800.00 in U.S currency and $20.00 in cash from his wallet. Victim 1

dropped off all of the UNSUBs at a location he was not familiar with.

13.    **Incident 13:** Your affiant reviewed incident 13 HPD report which occurred in the

Southern District of Texas and learned the following information. On June 09, 2023,

complainant (hereafter identified as Victim 1) advised he was employed as a Lyft driver.  HPD

Officers responded to 9626 Meadowcroft, Houston, TEXAS at approximately 10:55pm. Upon

the officer's arrival they were advised by Victim 1 he responded to a request for a ride share at

an unknown location in Southeast Houston, TEXAS. Upon his arrival at the location three

unknown black male subjects ("UNSUB's") got into his vehicle. Victim 1 stated that as soon as

they departed the location all three UNSUBs took out handguns, pointed them at him and told

him they were going to kill him.  Victim 1 stated that one of the UNSUB's grabbed him by the

neck and arms and dragged him to the backseat. Once Victim 1 was in the backseat he was pistol

whipped by one of the UNSUB's. One of the UNSUB's began to drive Victim 1 's vehicle to

Bank of America ("BOA").  The UNSUB's attempted to unlock Victim 1 's cell phone using

face ID, but it did not work.  The UNSUBs were also unsuccessful at several attempts to take

money out of the ATM.  They were able to take $700.00 in cash, his phone and BOA debit card.

The UNSUB's drove to Lansbourough apartments at 10010 Cullen Blvd, Houston, TEXAS and

exited the vehicle.

14.     **Incident 14:** Your affiant reviewed incident 14 HPD report which occurred in the

Southern District of Texas and learned the following information. On June 11, 2023,

complainant (hereafter identified as Victim 1) advised she was employed as an Uber driver.

HPD Officers responded to 15400 Campden Hill, Houston, TEXAS at approximately 12:07am.

Upon the officer's arrival they were advised by Victim 1 she responded to a request for a ride

share at an unknown location in Southeast Houston, TEXAS. Upon her arrival at the location

three unknown black male subjects ("UNSUB's") got into her vehicle. The UNSUB's told her to

drive to a certain area before instructing her to pull over.  When Victim 1 pulled over she felt

something hard pressed against the back of her head, she did not know if it was a gun or not. The UNSUB's demanded her cell phone and forced her to add money to her CashApp account. Victim 1 complied and gave the phone to one of the UNSUB's who then transferred $380.00 in U.S. currency to one of their CashApp accounts.  Victim 1 stated that the CashApp name was "Israel" with the handle of "$sackroutepoppa."  The UNSUB's demanded more money which ultimately declined. The UNSUB's stole both of Victim 1 's Android cell phones and exited the vehicle on foot.

15.    **Incident 15:** Your affiant reviewed incident 15 HPD report which occurred in the Southern District of Texas and learned the following information. On June 13, 2023, complainant (hereafter identified as Victim 1) advised he was employed as a Lyft driver.  Victim 1 waited until June 14, 2023, to report it to HPD. Victim 1 responded to a request for a ride share at 10010 Cullen Blvd, Houston, TEXAS. Upon his arrival at the location three unknown black male subjects ("UNSUB's") got into his vehicle in the backseat. As soon as they departed one of the UNSUB's pulled out a gun and placed it to the back of Victim 1 's head. The UNSUB's forced Victim 1 to move to the right passenger seat while one of them drove his vehicle. The UNSUB's demanded Victim 1 's wallet, which they took $750.00 in cash, a Wells Fargo and American Express credit card. The UNSUBs went to several ATM's and took out a combined total of approximately $3,503.00 in U.S. currency. The UNSUB's then drove around to several neighborhoods and committed two other armed robberies.  The UNSUB's drove Victim 1 to 5600 Sunbeam St, Houston, TEXAS. Released him and his vehicle but told him they would kill him if he notified police.

16.     **Incident 16:** Your affiant reviewed incident 16 HPD report which occurred in the Southern District of Texas and learned the following information. On June 15th, 2023, complainant (here-after identified as Victim 1) advised she is employed as a Lyft driver. Victim 1 stated that on June 15th, 2023, she responded to a request for Lyft ride at an unknown location. Victim 1 stated that upon her arrival at the location an unknown black male subject entered her vehicle and sat in the back seat of her vehicle. Victim 1 stated (UNSUB 1) requested to be taken to an ATM machine of a chase bank in the area. Upon their arrival at the ATM machine (UNSUB 1) produced a pistol and struck her in the head with the pistol. (UNSUB 1) instructed her to take money out of the ATM. Victim 1 told the complainant "No" and (UNSUB 1) proceeded to strike her several more times in the head with the pistol. Victim 1 attempted to block (UNSUB 1) from striking her with her hands resulting in her finger being broken by the pistol striking her hand. (UNSUB 1) then pushed Victim 1 out of the vehicle and drove off from the location with Victim 1 's vehicle, found to be a 2017 Nissan Sentra. Inside the vehicle was Victim 1 's cellphone and wallet containing debit cards and personal information.

17.     **Incident 17:**  Your affiant reviewed incident 17 HPD report which occurred in the Southern District of Texas and learned the following information. On June 17th, 2023, complainant (here-after identified as Victim 1) advised he was employed as an Uber driver. Victim 1 stated that on 6/17/2023 he accepted a ride at 5735 Lakefield Dr. in Houston, TEXAS/ Harris County, for three unknown black male subjects who requested to be dropped off in the 7700 block of Ellis Dr. in Houston, TEXAS/ Harris County. Victim 1 stated upon their arrival at the location all three (UNSUBs) produced pistols, which looked like Glocks, pointed the firearms at him and told him not to move. (UNSUB 1) who was sitting behind Victim 1 and

15

wearing a white tank top shirt, exited the vehicle and opened the driver's door of the vehicle. (UNSUB 1) then took his iPhone 13 MAX from the passenger seat of the vehicle while (UNSUB 2) who had remained in the back seat of the vehicle took his wallet from his pants pocket, that had $30.00 in U.S. Currency and some debit cards and his CashApp card information. The UNSUBs then fled the location on foot. After all, three UNSUBs had left the location Victim 1 called police to report the incident and found that a username of BIG BLRRDD transferred $73.00 in U.S. Currency from his cash app without his permission. Several other transfers were attempted but were unsuccessful.

18.     **Incident 18:** Your affiant reviewed incident 18 HPD report which occurred in the Southern District of Texas and learned the following information. On June 17th, 2023, complainant (here-after identified as Victim 1 advised he was employed as a Lyft driver. Victim 1 stated that on 06/17/2023 he responded to a request for a Lyft service at 514 Dalewood Dr., Victim 1 stated that upon his arrival three unknown black male subjects (UNSUBs) entered his vehicle. During the course of the ride all three unknown black male subjects produced pistols and held him at gun point. (UNSUB 1) demanded his wallet and went into his pockets and got his bank card. The UNSUBs then had the victim step out of the vehicle and get into the passenger seat. (UNSUB 1) then drove to an ATM machine and demanded his pin number. (UNSUB 1) then withdrew an unknown amount of money from his account. (UNSUB 1) then drove down the road and kicked Victim 1 out of his own vehicle. All three (UNSUBs) then drove away from the location with Victim 1 's vehicle. Grand Jury subpoenas later revealed that the request for this Lyft service was requested utilizing the cellphone taken in the previous robbery at 7700 Ellis Dr. in Houston, TEXAS/ Harris County.

19. **Incident 19:** Your affiant reviewed incident 19 HPD report which occurred in the Southern District of Texas and learned the following information. On June 20th, 2023, complainant (here-after identified as Victim 1) advised she was employed as an Uber driver. Victim 1 advised that on 06/20/2023 she received a fare to pick up three unknown black male subjects. Victim 1 did not know the exact location or time of the pick-up but stated she believed it to be on Water Ford Dr. in Houston, TEXAS/ Harris County. Victim 1 stated that upon the three UNSUBs entering her vehicle and sitting in the back seat the left the location for the desired location requested in the app. Upon leaving the location (UNSUB 1) climbed over the center console of the vehicle to the front passenger seat of the vehicle. UNSUB 2, who remained seated behind her, produced a pistol, and hold it up to her back rib cage. UNSUB 2 then demanded money from her, to which she replied she was just and Uber driver and had none. UNSUB 1 then took $50.00 in U.S. Currency from her wallet and told her that she had to use her credit cards to get them more money out of an ATM machine. Victim 1 attempted to tell the UNSUBs she did not know the pin codes to the cards; however, they still took her to several ATM machines. When she could not obtain any money the UNSUBs showed her, her own driver's license with her address and threatened to travel to her house and hurt her family. Victim 1 stated the only card she was able to get any money off of was her Uber corporate card which was $50.00 in U.S. Currency. The UNSUBs then forced her to drive to what she believed to be a drug house where they picked up pills and used them in her presence. The UNSUBs then forced her to drive to another location where UNSUB 3 exited the vehicle and entered a residence. The two remaining unknown subjects (UNSUBs 1 and 2) then forced her to drive to a convenience store where UNSUB 1 exited the vehicle and handed his pistol to UNSUB 2. UNSUB 1 entered

the store and appeared to be shopping. Victim 1 told UNSUB 2 that she needed to use the restroom and entered the store and walked directly to the bathroom of the establishment. Victim 1 walked past UNSUB 1 inside the store and locked herself in the bathroom. UNSUB 1 proceeded to knock on the door of the restroom attempting to get her to come out however Victim 1 refused and barred the door to the restroom. Victim 1 remained in the restroom for an extended period of time until she was sure both UNSUBs had left the location. Upon exiting the restroom, she found both UNSUBs had left the location with her vehicle, a silver 2019 KIA Soul bearing Texas license plate MVK7379.

*Phone*

7.     **Kenneth Kelley:**  In addition to the May 29th, 2023, incident (7 & 8) listed above, Kelley requested through his cellular device his friend, Raven Simpson ("Simpson") to order him an Uber ride. During an interview of Simpson, she stated that she was the only person who had access to her Uber account. Simpson ordered an Uber ride for Kelley that night from her house in the name of "KK." After she ordered the Uber ride, Kelley sent her money through CashApp for the ride, but it did not come directly from Kelley's CashApp account.

8.     In addition to the June 3rd, 2023, incident (9) listed above Kelley requested through his cellular device, his friend, Macie Brown ("Brown") to order him an Uber ride. During the interview of Brown, she stated she shared an Uber account with her sister Marliee Brown. Brown was the person who knew Kelley, who also goes by the name "KK." Brown stated she ordered the Uber ride for Kelley. Kelley told Brown to "make sure it was a white person cause they be trippin when he has his gun with him." Brown's card did not work so she used her sister's card to

18

pay for the ride. Brown received money from Kelley through CashApp for June 2-3rd, 2023 transactions, in the amount of $8.85-$9.00.

1.     In addition to the June 20th, 2023, incident (19) listed above, on June 21st, 2023, Houston Police Officers assigned to the Southwest Division CST, located the silver Kia Soul bearing Texas plate MVK7393, which was taken in the aggravated robbery on June 20th, 2023. Officers located the vehicle traveling Southbound on Martin Luther King Blvd and pull into a gas station located at 5454 Airport Blvd in Houston, TX/ Harris County. Officers approached the vehicle and took two males into custody after brief foot pursuits. Kelley was apprehended at the scene as the driver of the vehicle and charged with unauthorized use of a motor vehicle by the Harris County District Attorney's Office. During the arrest of Kelley on the above listed date, by HPD Southwest Division CST, they recovered from Kelley's person, 1 black iPhone with a red case from his front right pocket during the search incident to arrest.

2.     HPD, TFO J. Huckabee and TFO J. Black read Kelley his Miranda Rights in a recorded interview. Kelley placed himself inside the vehicle during the course of the robbery but claimed no responsibility for the robbery. Houston Police Investigators obtained video surveillance from the Sunny's Food Mart located at 9715 Stella Link in Houston, TX/ Harris County. Officers were able to observe the description of events taking place exactly as described by Victim 1 on 06/20/2023. Officers were able to positively identify Kelley via the surveillance as getting out of the passenger seat of the vehicle as well as having a pistol in his hand. Officers were able also able to identify Kelley as the subject inside the store attempting to get Victim 1 out of the bathroom where she was seeking safety from her abductors. During the interview of Kelley officers also found through his own admissions he goes by the name "KK" and his home address

is 506 Dalewood Dr. in Houston, TX/ Harris County. During the interview, Kelley requested to HPD, TFO J. Black to look at his cell phone. According to the recorded interview, Kelley stood up and leaned over the table to the HPD, TFO J. Black and typed in his cell phone passcode so he could access the phone. This is the same phone that was recovered during Kelley's arrest on June 21st, 2023, by HPD Southwest Division CST.

3.	HPD Officers found a link to that address in incident number 18 where the Uber driver that was requested was dispatched to 514 Dalewood Dr. in Houston, Tx/ Harris County, the same hundred block as Kelley's home address. Further the requestor of the ride Ronniceia Jackson listed the guest taking the Uber ride as "KiKi". Additionally, as of June 27th, 2023, Photo line-ups showing Kelley and five other individuals of similar characteristics have been shown to victims in incident numbers 8, 9, 11 and 15 in addition to incident 18 who all positively identified Kelley as one of the individuals who committed the robberies against them on the date of their individual robberies.

4.	Throughout the investigation, your Affiant learned that the individuals who committed these offenses routinely had their phones on them.  The Complainants identified their assailants as having used their phones to look up the locations of ATMs and banks, to transfer money to their cash app accounts, to place phone calls and to even make Facetime calls.

*Conclusion*

5.	Based on my training and experience, your affiant knows that individuals who commit aggravated robberies together use wireless telephones and other digital devices to plan and carry out the commission of the offense. The perpetrators will make phone calls, send text and electronic messages, send emails, and otherwise communicate with one another. The perpetrators will also

often do research on the location of targets and locations to take the kidnapped victim, which will be stored in internet history, as well as in mapping data and historical GPS information stored on the phone. Your affiant knows that the cell phones found in the possession of the suspects are capable of taking, receiving, and sending photographs and videos. Your affiant further knows that the perpetrators of these crimes also often take and send photographs and videos to not only establish the target of their crimes, but also to engage in bragging and boasting among one another and on social media. This information can then be further used to show the ongoing nature of the criminal enterprise, a necessary element of the crime of engaging in organized crime.

6.      Based on the above information, your affiant believes that Kenneth Kelley used his cellular devices to coordinate and plan the HOBBS Act aggravated robberies, kidnapping, brandishing of firearms and may contain information related to their illicit activities. Therefore, I have reason to believe that the wireless telephones attributed to Kenneth Kelley and the associated telephonic data are items which constitutes evidence of a criminal offense, items constituting evidence tending to show that a particular person committed a criminal offense, and instrumentalities of a criminal offense.

## **TECHNICAL TERMS**

7.      Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line"

21

telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include but are not limited to storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet

traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

e.      "Encryption" is the process of encoding messages or information in such a way that eavesdroppers or hackers cannot read it but authorized parties can.  In an encryption scheme, the message or information, referred to as plaintext, is encrypted using an encryption algorithm, turning it into an unreadable ciphertext.  This is usually done with the use of an encryption key, which specifies how the message is to be encoded.  Any unintended party that can see the ciphertext should not be able to determine anything about the original message.  An authorized party, however, is able to decode the ciphertext using a decryption algorithm that usually requires a secret decryption key, to which adversaries do not have access.

8.      Based on my training, experience, and research and from consulting the manufacturer's advertisements and product technical specifications available on the internet, I know that the Target Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, an encrypted device, and can access the internet, amongst other various capabilities. In my training and experience, examining data stored on

devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Target Devices.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

9.      The warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

10.     *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions

about how electronic devices were used, the purpose of their use, who used them, and when.

    d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

11.    *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant being sought would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scan of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

12.    *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## AUTHORIZATION REQUEST

13.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41 authorizing the search of the device as described in Attachment A and Attachment B.

14.     Due to the sensitive nature of this investigation, and the details contained within, it is further requested that this affidavit be sealed until further order of the court.

Respectfully submitted,

_Joseph T. Oppedisano_

Special Agent, Joseph T. Oppedisano
Federal Bureau of Investigation

Subscribed and sworn to me by telephone on September 15, 2023, and I find probable cause.

The Honorable Peter Bray
United States Magistrate Judge
Southern District of Texas

## **ATTACHMENT A**

### **Items to be searched:**

1. Black Apple iPhone with a Red Case, SE IMEI: 355568941575893 (also referred to as Target Device)



## ATTACHMENT B

## INFORMATION TO BE SEIZED

1.        All records on the Target Device described in Attachment A that include but not limited to violations of 18 U.S.C. § 922(o) and 18 U.S.C. § 922(a)(1)(A) and involve Kenneth Kelley and any other unknown individuals including:

a.        Any photographs, video files, text, or multimedia messages (SMS and MMS), call history or call logs, and contact information, including but not limited to phone numbers stored in the telephone contained within the items listed in Attachment A as well as on any communication applications on said phone.

b.        Any and all communications previously received or transmitted, or prepared in contemplation of transmission, including electronic mail or data associated with electronic bulletin board systems, stored on any of the electronic media named above. All electronic communications, including those previously received or transmitted, or held in temporary, intermediate storage incident to transmission, documents, and materials, including those used to facilitate previously received, transmitted, or stored, or prepared in contemplation of transmission, including electronic mail or data associated with electronic bulletin board systems, whether stored on any of the electronic media named above or held in temporary, intermediate storage incident to transmission to the individuals or premises with the scope of this application.

c.        Such electronic data in the form of electronic records, applications, documents, and materials, including those used to facilitate communication.

d.      Any and all financial applications including, but not limited to, bank accounts and cashApp accounts.

e.      Any and all search history and location data.

f.      "Hidden," erased, compressed, password-protected, or encrypted files.

g.      Various file "directories" and the individual files they contain, recently deleted data, scanning storage area for deliberately hidden files

2.      Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.